IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Kevin L. Harbin, #303214, )<br><br> Petitioner, )<br><br> vs. )<br><br>Warden, Broad River<br>Correctional Institution, )<br><br> Respondent. ) | Civil Action No. 6:09-2790-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently confined in the Broad River Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Greenville County Clerk of Court. The petitioner was indicted at the August 2004 term of the Greenville County Grand Jury for kidnaping (2004-GS-23-6122), strong arm robbery (2004-GS-23-6123), and first-degree criminal sexual conduct (CSC) (2004-GS-23-6124). He was represented by attorney Caroline Horlbeck of the Greenville Bar. After the State called the case to trial, the petitioner was found guilty of each charge. On September 8, 2005, the petitioner was sentenced by the Honorable

Larry R. Patterson to concurrent sentences of 30 years for kidnaping, 15 years for strong arm robbery, and 30 years for first-degree CSC.

***Direct Appeal***

A notice of appeal was filed at the South Carolina Court of Appeals. Aileen P. Clare of the South Carolina Office of Appellate Defense filed an initial brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967). In that initial brief, counsel asserted as the sole arguable ground: "[D]id the lower court err by admitting into evidence the prejudicial hearsay statements of the alleged victim presented through the victim's mother's testimony?"

Subsequent to the serving of the initial *Anders* brief of appellant, the petitioner indicated a desire to abandon the appeal. On January 12, 2007, counsel Aileen Clare write the Clerk of Court for the South Carolina Court of Appeals indicating that the petitioner had decided to drop his appeal. Counsel Clare declared in the letter that she had informed him of the consequences of dropping the appeal. She attached to her letter an affidavit from the petitioner verifying:

> 2.  . . . "I have been informed that if I drop my direct appeal that I forever waive those issues that could be raised.
>
> 3.  In light of the risks which have been explained to me, it is my desire that the South Carolina Office of Appellate Defense drop the appeal formerly filed on my behalf.
>
> 4.   have made this decision on my own, with a full understanding of all the possible consequences of this action.
>
> 5.  I do not wish to appeal.
>
> S/ Kevin Lamar Harbin."

Harbin affidavit, sworn January 10, 2007. The Court of Appeals entered an Order of Dismissal and Remittitur on January 22, 2007 (resp. m.s.j., ex. 3).

2

**STATE PCR PROCEEDINGS**

The petitioner filed an application for post-conviction relief (PCR) on January 12, 2007 (2007-CP-23-0280) (App. 266-72). In his application, the petitioner alleged he was being held in custody unlawfully for the following reason:

(1)     Ineffective assistance of trial counsel.

The petitioner subsequently filed two amendments to his PCR application. Both amendments are dated April 13, 2007. The petitioner alleged:

(1)     Ineffective assistance of trial counsel:

(a) Failed to properly and adequately develop and highlight the inconsistencies between the statements and testimony of Megan George and Denise Henderson.

(b) Failed to request a jury charge about inconsistent testimony.

(c) Failed to except to the trial judge's decision to provide exhibits to the jury (after they sent out a jury question), rather than giving a verbal clarification.

(d) Failed to object to the erroneous kidnapping charge.

An evidentiary hearing was convened at the Greenville County Courthouse on July 10, 2007 (App. 277-332). The petitioner was present and represented by attorney Rodney W. Richey. Karen C. Ratigan of the South Carolina Attorney General's Office represented the respondent. The Honorable Edward W. Miller denied relief in an order dated August 7, 2007 (App. 334-41).

***PCR APPEAL***

The petitioner made an appeal to the South Carolina Supreme Court. In the appeal, he was represented by Joseph L. Savitz, Chief Appellate Defender of the S.C. Commission on Indigent Defense, Office of Appellate Defense. On July 1, 2008, counsel Savitz made a Petition for Writ of Certiorari asserting as the issue presented:

3

> (11)   Trial counsel did not provide petitioner effective assistance when she failed to object to the judge's preliminary instructions inviting the jury "to evaluate the case as we go along."

Petition, p. 2.  The respondent State of South Carolina, through Assistant Attorney General Karen C. Ratigan, made a Return to the Petition on July 23, 2008.  On January 22, 2009, the Supreme Court of South Carolina entered its letter order that the petition for writ of certiorari was denied.  On February 10, 2009, the remittitur was sent by the Clerk of the South Carolina Supreme Court.[1]

## **CURRENT ALLEGATIONS**

In his *pro se* petition for a writ of habeas corpus, in his petition and the subsequent memorandum, the petitioner makes the following allegations:

> I.    Actual Innocence: Independent Basis for Habeas Corpus Relief.
>
> A.    The R/O spoke with the victim and had her go through the business to show all areas known to her as being touched by the suspect. None of the fingerprints or palmprints taken from the crime scene match me and were never compared to anyone else. The sweat from the prints has to be tested at a lab and this was not performed. The prints from the breaker panel, door knob, toilet and sink were allegedly never reviewed by print examiner from Forensic Division. The motion and order for the taking of my palm print clearly states that it will reveal evidence material to my guilt or innocence.
>
> B.    The Petitioner asserts that he made a petition for DNA testing in the Greenville County Court of General Sessions. He also asserts that he made a petition for

---

[1]On February 19, 2009, the petitioner mailed a *pro se* "Petition for Rehearing SCACR 221(A)." In a letter dated February 12, 2009, the Honorable Daniel R. Shearouse, Clerk of the South Carolina Supreme Court advised the petitioner that the pleading was received on February 12, 2009, that it needed to be received on or before February 6, 2009, and that it was therefore untimely. He noted also that the remittitur had been sent to the circuit court on February 10, 2009 which ended the appellate court's jurisdiction in the matter.

rehearing of writ of certiorari and motion to recall remittitur.

II.     Due Process Violation

A.     Trial Court jury instructions on how the jurors must evaluate the case and when they must evaluate the case.

B.     Trial court jury instructions the kidnapping charge deprived Petitioner of Due Process as guaranteed by the United States Constitution.

C.     Trial Court's refusal to define "reasonable doubt" at the jurors request deprived Petitioner of Due Process of Law as guaranteed by the United States Constitution.

D.     Obstruction from State Officials which deny me full and fair opportunity to present my constitutional claim.

E.     Failure of Solicitor to have all prints reviewed by Forensic Division through State and National Database.

F.     Failure to disclose criminal record of key prosecution and identification witness (Ms Denise Henderson , who petitioner claims has a long history of "fraudulent checks" dating back to 2001, some of which he claims were felonies). See Memorandum , p. 14.

G.      Did trial court err in failing to grant defense counsel's motion for directed verdict? (Memorandum, ground three, p. 13).

III.     Ineffective Assistance of Counsel.

A.     Trial counsel's failure to properly and adequately highlight the inconsistencies of witness Megan George and Denise Henderson.

B.     Trial counsel's failure to object to trial court's refusal to define "reasonable doubt" at the juror's request constituted constitutional ineffective assistance of counsel. (Also Memorandum , p. 10-11)

C.     Trial counsel's ineffective in failing to object to trial court's erroneous charge on the kidnapping charge

5

deprive Petitioner effective counsel as guaranteed by the U.S. Constitution.

D.    Trial counsel's failure to subpoena and produce expert witness Mr. Howard Bradley constitutes constitutional ineffective assistance of counsel.

E.    Trial counsel failure to request all prints collected be checked for comparison and run in the state database.

F.    Counsel was ineffective in failing to object to the trial judge's preliminary comments inviting the jury "to evaluate the case as we go along."

G.    Counsel failed "to put the State's case to an adversarial testing by evidence within her personal knowledge." (Memorandum, p. 11-12).

    1.    Counsel was aware that Petitioner maintained his innocence, that there was no physical evidence against the defendant of fingerprints, palmprints and those found did not match defendant, that the case had been closed, that the victim had refused a polygraph test at some point, and the Petitioner did not testify at trial.

    2.    Counsel was aware that she could have called two potential alibi witnesses, Joe McMahan and Charles Walker who had spoken to the Public Defender's investigator and had told him that Petitioner had a white Cadillac so why would he make his getaway on foot and could have gotten this information to the jury. Memorandum, p. 11-12.

IV.    Prosecutorial Misconduct.

A.    Solicitor's closing argument denied petitioner's due process rights to a fair trial and impartial jury.

B.    Did not receive criminal history of key state witness, until after trial in direct violation of the required disclosure Solicitor is bound to adhere to.

C.    Failure and neglect by solicitor to act on having all prints reviewed for comparison and run through state and national database by Forensic Division.

V.    SPEEDY TRIAL ACT : Did the State Court of Appeals err in ruling that there was no violation of the Speedy Trial Act.

A.    Motion with Memorandum of Law - Forthcoming - filed October 21, 2004; Trial Date : September 5, 2005.

B.    He asserts in his memorandum at page 15 that he filed Motion for Speedy Trial dated October 21, 2004 which was clocked in by the Clerk on November 3, 2004. He states that he was not tried until September 6, 2005.

C.    Harbin claims that the state has adopted the federal rules of criminal procedure. He claims that §14-5-90 is non-discretionary and requires him to be discharged if two statutory terms pass. He claims that the state failed to timely prosecute under § 17-23-90.

D.    He also claims that his indictment on criminal sexual conduct was untimely.

VI.    Was P.C.R. Counsel Ineffective.

A.    Did not develop one claim for hearing and the record was left open to explore and develop alibi defense.

On March 5, 2010, the respondent filed a motion for summary judgment. By order filed March 8, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his response and affidavit in opposition to the motion for summary judgment on March 31, 2010. On August 2, 2010, the petitioner submitted additional attachments to his response.

## APPLICABLE LAW AND ANALYSIS

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

7

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v.*

8

> *Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying
> pre-AEDPA *de novo* standard of review to claims of ineffective
> assistance of counsel that were properly raised, but not
> adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir. 1999).

### Ground One

In ground one, the petitioner alleges that he is entitled to habeas corpus relief because he is actually innocent. The Supreme Court has established that there are two types of "actual innocence" claims: substantive and procedural. Where a petitioner contends that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect, that is a substantive claim, and it is not cognizable in federal habeas corpus. *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding"). The Supreme Court has also held that a showing of actual innocence can serve as a "gateway" to the review of otherwise procedurally defaulted constitutional claims. In *Schlup v. Delo*, 513 U.S. 298, 327 (1995), the Supreme Court clarified that a federal habeas petitioner who is asserting actual innocence as a procedural gateway is obliged to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." The Court stated that a habeas petitioner claiming that new evidence demonstrates that he is actually innocent "must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* (citing *Murray v. Carrier*, 477 U.S. 478 (1986)). Furthermore, "[t]he habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been

9

wrongly excluded or to have become available only after the trial." *Id.* at 328 (quoting 38 U.Chi.L.Rev., at 160). In other words, the district court must make "a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329.

The petitioner argues that his showing of actual innocence is sufficient to overcome any state procedural default (pet. aff., doc. 32). This court disagrees. In his allegation, the petitioner asserts factual matters concerning the crime victim's attempts during the investigation to point out various areas where the perpetrator's fingerprints may have been located. During the trial, the victim, Megan George, testified about the incident at The Silver Closet jewelry store on May 12, 2004. Particularly, she testified that the perpetrator was in the store for 10-15 minutes, that he came around the counter, pulled her hair and directed her to get all the cash out of the cash register, that she gave him the money, that he walked her to a different room and ultimately into the bathroom, that he closed the door and demanded she pull her pants down, that she did after a second request, that he digitally penetrated her vagina, that she then pulled her pants up and started to hit him, but he threw her against the wall and punched her in the face (App. 25-26, 76-81). Her wrists were subsequently tied by a vacuum cord behind her back and then tied around handicap bars (App. 80). Eventually, she knew the person left the store because she heard the door chime (App. 27, 81, 86). The victim stated that she was blocked in the bathroom after he left and had to force her way out and climb over a cabinet that had been pushed against the bathroom door (App. 81-82). After getting out of the bathroom, the victim called 911 to report the crime and called the owner of the shop (App. 87). She was taken to the hospital in an ambulance after the police arrived (App. 88). Subsequently, the victim, who stated the altercation lasted 15 to 20 minutes and that she was within two to three feet of her attacker, identified the petitioner in a photographic lineup as the perpetrator (App. 28-31, 47). At trial, she pointed out the petitioner in the courtroom (App. 31, 91-95). She described the perpetrator as a black male, 30 to 40 years old,

wearing an orange jacket, orange pants, and a Clemson shirt, and having a shaved or bald head (App. 96).

Denise Henderson, who was a customer in the store on the night in question, testified that she saw another person in the store for at least seven minutes who was acting in a way that made her feel uneasy. She stated that she was at "arm's length" from the other person in the shop (App. 36-37, 118-20). She testified that she identified the person in a lineup on May 28 with Investigator Fortner (App. 37-41, 122-123). She stated that the person was wearing a cap and a jogging type outfit (App. 41). She identified the petitioner in the courtroom as the person she saw in The Silver Closet and that she picked out of the lineup (App. 41, 49, 123).

Testimony was introduced that the petitioner gave a statement to Investigator Fortner (App. 55-56, 160). In that statement, the petitioner stated, "I know the hammer is going to come down on me since I'm black and the clerk is a white girl" (App. 55, 160). Investigator Fortner testified that at that time the petitioner interrupted himself and then asked him "what color was the girl" (App. 55). Investigator Fortner confirmed that at no time had he stated that the victim was white (App. 55).

Investigator Fortner stated that the shop was processed for fingerprints (App. 176). He testified that some prints were lifted, including a palm print, but that they did not match the petitioner's prints (App. 176). Also, Sergeant Darwin Shaw testified that on May 12, 2004, he responded to the shop. He stated that the victim escorted him through the shop to show areas that may have been touched by the person. He then dusted the areas. He stated that he took photographs and lifted fingerprints off the breaker box that he sent to their latent examiner (App. 187).

Sergeant Sherbert, the latent print examiner with the Greenville Department of Public Safety testified generally about the ability and inability to get prints at a crime

scene (App. 201-202). She described the reasons why prints may not be left on cash registers, countertops, and toilets (App. 205-208).

At the conclusion of the trial, the petitioner's trial counsel made a motion for a directed verdict of acquittal (App. 217). The motion was denied. Judge Patterson noted that the denial was proper based upon the testimony of the victim and the evidence of the identification of the petitioner in the photographic lineup and in court by the victim and the customer (App. 217).

In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Schlup*, 513 U.S. at 327. The court's review of the record does not support a showing of actual innocence sufficient to act as a gateway for the review of his otherwise procedurally-defaulted constitutional claims.

The petitioner asserts that he made a petition for DNA testing in the Greenville County Court of General Sessions (pet. at pp. 5-6). In his affidavit submitted in opposition to the motion for summary judgment, the petitioner argues that "DNA testing of the sweat from the prints taken at the crime scene will produce new evidence that was not available at trial to establish his factual innocence" (pet. aff., doc. no. 32).

In September 2009, prior to filing the instant petition, the petitioner submitted a motion requesting an extension of the available time for his filing of an initial habeas corpus petition pursuant to Section 2254. He claimed that he wished to submit a claim of "actual innocence" to the court once he obtained post-conviction DNA and other evidence testing. The Honorable Paige J. Gossett, United States Magistrate Judge, entered an order on September 28, 2009, denying the motion for extension of time. *See Kevin L. Harbin*, Misc. Case No. 3:09-mc-120-PJG. The petitioner attached to his motion an order from the Clerk of the South Carolina Supreme Court dated April 10, 2009. The order related to proposed DNA testing for prisoners under certain recent South Carolina state legislation titled "Access to Justice Post-Conviction DNA Testing Act and Preservation of Evidence

12

Act" (S.C. Code Ann. § 17-28-40A (Supp. 2008)(the DNA Act).  He also attached completed forms dated August 11, 2009, related to DNA and other testing of certain items of evidence presented at his criminal trial in September 2005.  Judge Gossett stated in her order that it appeared that the forms were promulgated by the South Carolina Supreme Court to assist in the implementation of the DNA Act.  However, according to footnote one on the order from the state Supreme Court, even though the Act "was to be effective January 1, 2009," implementation has been delayed, apparently indefinitely, "until such time as general funds are appropriated or federal or other funds are received to begin implementation of the act." *Harbin*, Misc. Case No. 3:09-mc-120-PJG, 9/28/09 Order at pp. 1-2.  Judge Gossett stated that it appeared the petitioner did not believe that he could obtain the DNA and other evidence testing he needed to support the actual innocence claim he wished to make within the time that he believed he had available for filing a federal habeas petition because of the state's delay in implementation of the DNA Act.  *Id.* at p. 2.

Judge Gossett ruled that the petitioner's time period for filing a federal habeas petition should not be extended indefinitely to permit the petitioner's pursuit of post-conviction DNA testing in an effort to support his proposed actual innocence claim.  *Id.* at p. 3. Judge Gossett cited relevant authority indicating that "viable, i.e., properly raised and proved, actual innocence claims raised in federal habeas petitions are not restricted by the general imitations of procedural bar and successiveness established under 28 U.S.C. § 2244."  She concluded "that so long as Harbin exercises due diligence in pursuing the DNA and other evidence testing once the South Carolina DNA Act is implemented, he may raise any actual innocence gateway claim supported by evidence ultimately obtained from such testing in a second petition submitted after the time for filing an initial § 2254 petition asserting already exhausted grounds has passed."  *Id.* at p. 3.

The instant petition was filed shortly after Judge Gossett entered her order. It does not appear that the State has yet implemented its post-conviction DNA testing

process for prisoners, and the petitioner has submitted no DNA evidence supporting his actual innocence to this court. However, as found by Judge Gossett, it appears that the petitioner may be able to raise that claim in a second petition should he obtain such evidence at a later time.

### Ground Two

In ground two, the petitioner alleges a number of due process violations. None of these allegations were raised in the state appellate courts as free-standing constitutional violations. If a petitioner before a federal district court fails to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in state courts. In such a case, a federal district court is barred from considering the habeas claim absent a showing of cause and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice, as the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A prisoner can demonstrate cause for procedural default by proving that he was deprived of constitutionally effective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). However, if counsel performs at a constitutionally acceptable level, then counsel's performance cannot constitute cause for procedural default. *Id.* at 486-88. A petitioner may establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is actually innocent. As discussed above, the court's review of the record does not support such a showing of actual innocence.

In his first specification of due process error, the petitioner contends that the trial court's preliminary instructions to the jury on how to evaluate the case were in error. This issue was not objected to at trial and was raised for the first time in the state PCR

14

proceeding as a Sixth Amendment ineffective assistance of counsel claim.  The issue –

presented as an ineffective assistance of counsel claim – was the only issue raised in the

petition for writ of certiorari.  The respondent argues that the claim is procedurally barred

because it was not objected to at trial nor preserved in a direct appeal, and as cause for

procedural default has not been shown under *Coleman*, 501 U.S. at 750.  This court

agrees.

In his preliminary remarks to the jury prior to the commencement of the

petitioner's trial, the trial judge stated:

> We trust you now in criminal matters, all of them are important,
> we trust you to go home and come back and not discuss the
> case with anyone until the case is over and you start
> deliberating in the jury room. You have to evaluate the case as
> we go along, I know that, but don't make up your mind
> conclusively as to what that verdict should be until you have
> heard the entire case, the lawyers have had a chance to make
> their closing statements and then I go over the law with you.
> But remember that. Don't discuss it with anyone. Keep an open
> mind throughout the entire trial before you begin your
> deliberations.

(App. 65).

At the PCR hearing, the petitioner argued one comment in these preliminary

remarks – "You have to evaluate the case as we go along" – was improper, and trial

counsel should have objected and asked for a curative instruction.  The petitioner argued

this comment instructed the jury "to make an opinion before they've heard all the evidence"

(App. 294).  Trial counsel testified she did not think this comment was improper.  Trial

counsel testified she believed the trial judge was simply advising the jury to pay attention

throughout the trial and noted that, immediately after the trial judge made this comment, he

instructed the jury not to make a decision until the case was concluded and they began

deliberations (App. 316-17).

15

In denying the petitioner's application for post-conviction relief, the PCR judge found the trial judge's comment to the jury that "you have to evaluate the case as we go along" was not improper. The PCR judge found the comment was taken out of context and that the balance of the trial judge's preliminary remarks properly instructed the jury not to begin deliberations until the end of the case (App. 338-39).

Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689.

As argued by the respondent, the PCR judge did not err in finding the petitioner failed to meet his burden of proving trial counsel was ineffective. It is true that neither the jury nor individual jurors can begin deliberations until the case is concluded and the law has been charged. *See, e.g., State v. Aldret*, 509 S.E.2d 811, 813 (S.C. 1999) ("[I]nstructions which invite jurors to engage in premature deliberations constitute reversible error."). The jury in this case, however, was not instructed to deliberate prior to the conclusion of the case. While the trial judge did instruct the jurors that "[y]ou have to evaluate the case as we go along," the last part of that same sentence was a warning to the

16

jury that they must hear the entire case before they made up their minds. The trial judge then reiterated the jurors must "[k]eep an open mind throughout the entire trial." As there was no error in the trial judge's preliminary remarks to the jury, trial counsel cannot have been ineffective in failing to object. Regardless, the petitioner cannot prove prejudice resulted from the allegedly erroneous comment. The trial judge clearly instructed the jury to refrain from any type of deliberations until the conclusion of the trial and the jury charge (App. 65).

As the petitioner failed to meet this burden of proving ineffective assistance of trial counsel on this issue, the PCR judge did not err in denying the petitioner's PCR application. This was a reasonable application of *Strickland*, 466 U.S. 668. Since ineffective assistance has not been shown, cause for procedural default under *Coleman,* 501 U.S. at 750, was not proven. Therefore, the allegation as a free-standing due process violation should be denied and dismissed.

In his second specification of a due process violation, the petitioner claims that the trial judge erred in his jury instructions on kidnaping (*see* App. 251-52). Again, this claim was not raised at trial (App. 255). Like the first specification, it was not timely raised in the abandoned appeal (and could not have been due to the failure to object). Also like the first specification, it was raised as a Sixth Amendment violation in the state PCR action and denied by Judge Miller (App. 340). However, unlike the first specification, it was abandoned in the PCR appeal as it was not being raised in the certiorari petition. Where the cause is ineffectiveness of counsel, the underlying ineffectiveness claim must have been exhausted in state court. *Murray*, 477 U.S. at 489. If the claim of ineffectiveness is itself defaulted, it cannot be the basis for cause, unless the petitioner can establish cause and prejudice with respect to the ineffectiveness claim itself. *Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000); *see also Swisher v. True*, 325 F.3d 225, 231 (4th Cir. 2003). The petitioner has failed to do so, and the claim should be dismissed.

17

In the third due process specification, the petitioner claims that the trial court was ineffective in failing to properly charge reasonable doubt after the jurors' request. Like the prior claim, this is procedurally barred. First, the trial court did define reasonable doubt in its instructions (App. 246-47). Further, as argued by the respondent, the language of the trial judge defining reasonable doubt as "the kind of doubt which would cause a reasonable person to hesitate to act" (App. 246) is the exact language expressly approved in *State v. Manning*, 409 S.E.2d 372, 375 (S.C. 1991). *See State v. McHoney*, 544 S.E.2d 30, 36 (S.C. 2001) (finding similar instruction was not erroneous). In another portion of the instruction, the judge stated:

> If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged you must find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

(App. 247). This language is found in the proposed jury instruction developed by the Federal Judicial Center and was cited with approval in Justice Ginsberg's concurring opinion in *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsberg, J., concurring). No objection was made to those instructions (App. 255). Second, when the jury requested a definition, the court gave the jury the reasonable doubt instruction approved by Justice Ginsberg in *Victor* by sending a copy of the written instructions to the jury (App. 256-57, Court Exhibits 1 and 2). There was no objection to this request (App. 257). Further, the direct appeal, which did not raise this issue, was abandoned. When the matter was raised as a Sixth Amendment violation for counsel's failure to object in the PCR case, Judge Miller ruled:

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the jury charge for kidnapping. This Court has reviewed the kidnapping charge and finds it was accurate and proper. (Trial transcript, p.251, line 15 – p.252, line 19). Similarly, this Court finds the Applicant failed to meet his burden of proving trial counsel should have

18

> objected to the trial judge's decision to send a copy of the reasonable doubt charge to the jury instead of reading it to them in court. (Trial transcript, p.256, line 21 – p.257, line 3).This Court finds this decision was well within the trial judge's discretion.

(App. 340).  The PCR Court concluded that neither deficient performance or prejudice had been satisfied under *Strickland*.  *Id.*  The respondent argues that cause and prejudice have not been shown.  This court agrees.  The petitioner abandoned the claim in the PCR appeal.  Under *Swisher*, 325 F.3d at 231, and *Coleman*, 501 U.S. at 750, he is barred from raising the claim as a due process violation.  Further, under *Victor*, 511 U.S. at 27, and *Manning*, 409 S.E.2d at 375, his claim lacks merit.  Accordingly, the claim should be dismissed.

In his next assertion, the petitioner makes the vague claim that state officials denied him the opportunity to present his constitutional claim.  As argued by the respondent, as well as being procedurally barred by its initial presentation in this proceeding, it lacks any specificity and is thus too vague to address.

In his next due process specification, the petitioner complains that the Solicitor failed to have all the prints reviewed by the Forensic Division.  This claim has never been presented as a free-standing claim.  Thus, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  Again, where the cause is ineffectiveness of counsel, the underlying ineffectiveness claim must have been exhausted in state court.  *Murray*, 477 U.S. at 489.  Here, the claim was never raised as a Sixth Amendment violation.  If the claim of ineffectiveness is itself defaulted, it cannot be the basis for cause, unless the petitioner can establish cause and prejudice with respect to the ineffectiveness claim itself.  *Edwards*, 529 U.S. at 452-54; *see also Swisher*, 325 F.3d at 231.  The petitioner has failed to do so, and the claim should be dismissed.

In his next due process specification, the petitioner asserts that the State failed to disclose a criminal record of Denise Henderson concerning fraudulent checks. As argued by the respondent, this issue was never raised in state court at the state PCR hearing and must be deemed procedurally barred, particularly where the petitioner asserts that he received the information at the PCR hearing from his PCR counsel (mem. in supp. of pet. at p. 14, doc. no. 12). The record does not include any information on when or whether his trial counsel received it. However, the matter was not raised during the PCR hearing despite his knowledge and possession of the record (*id.*, doc. no. 12-2). It is procedurally barred by this default.

In his next due process specification, the petitioner makes a free-standing due process violation specification concerning the failure of the trial court to grant a directed verdict. The matter is procedurally barred because it was abandoned when the direct appeal was dropped. *See Coleman*, 501 U.S. at 732. *See* S.C. Code Ann. §17-27-20(a)(6) (sufficiency of evidence claims are not proper in PCR proceedings). Further, the claim is without merit. Habeas relief is appropriate only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). As the state trial judge noted, the testimony of the victim and the customer that established the existence of the crimes and the identification of the petitioner is sufficient for the denial of the motion (*see* App. 217).

### Ground Three

In ground three, the petitioner alleges a number of ineffective assistance of counsel claims. In his first specification, he asserts that counsel was ineffective in failing to highlight inconsistencies in the testimony and statements of the victim and Denise Henderson. This issue was raised in the state PCR proceeding (App. 307-308). Counsel

Horlbeck testified at the PCR hearing that she likely did not cross examine the victim on little inconsistencies because the bulk of the victim's testimony about what happened was consistent (App. 307-311).  In denying relief on the claim, Judge Miller held:

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the victim's inconsistent testimony. As a threshold matter, this Court finds any such inconsistencies were minor and did not alter the victim's version of events. This Court further finds trial counsel attempted to discredit the victim's story or shake her testimony and that the victim simply did not waver in her assertion that the Applicant assaulted her.

(App. 338-40).   This was a reasonable application of *Strickland*, 466 U.S. 668. Furthermore, the petitioner did not appeal the denial of this specification to the South Carolina Supreme Court.  As argued by the respondent, this specification is procedurally barred under *Coleman,* 501 U.S. 711.  Accordingly, it should be dismissed.

In his second specification, the petitioner asserts that counsel erred in failing to object to the trial court's reasonable doubt instructions.  The petitioner's trial counsel testified at the PCR hearing that she did not object because she considered it a good thing for the petitioner that the trial judge sent a copy of the written instructions to the jury when they requested a definition (App. 315).  When the matter was raised in the PCR case, Judge Miller ruled:

> [T]his Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the trial judge's decision to send a copy of the reasonable doubt charge to the jury instead of reading it to them in court. (Trial transcript, p.256, line 21 – p.257, line 3). This Court finds this decision was well within the trial judge's discretion.

(App. 340).  The PCR Court concluded that neither deficient performance or prejudice had been satisfied under *Strickland*, 466 U.S. 668.  *Id.*  The petitioner abandoned this claim in the PCR appeal when it was not raised.  Accordingly, the claim is procedurally barred and should be dismissed.

In the third specification, the petitioner contends that trial counsel should have objected to the kidnaping instructions.  As set out above, this matter was denied in the PCR action when Judge Miller ruled, "This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the jury charge for kidnapping.  This Court has reviewed the kidnapping charge and finds it was accurate and proper. . . " (Appl 340).  The matter was dropped in the PCR appeal.  Habeas corpus consideration of the Sixth Amendment claim is thus foreclosed by the default in the collateral proceedings.

In his fourth allegation, the petitioner contends that the trial counsel was ineffective in failing to subpoena and present Howard Bradley as an expert witness.  This issue was never raised in state court when there was an opportunity to litigate the claim in the state PCR proceedings.  Further, the respondent argues that a review of the record is devoid of any mention of Mr. Bradley, his expertise, or the substance of any potential testimony.  Based upon the foregoing, this allegation is barred under *Coleman*, 501 U.S. 711.

In his fifth specification, the petitioner asserts that trial counsel was ineffective in failing to have all prints analyzed.  The claim was never raised in the PCR proceedings.  Accordingly, the claim is procedurally barred and should be dismissed.

In his sixth specification of error, the petitioner contends that counsel was ineffective in failing to object to the trial judge's preliminary comments inviting the jury "to evaluate the case as we go along."  This issue was addressed above in ground two concerning due process.  The issue was preserved in the state PCR certiorari proceedings.  However, as discussed above, the claim must still be denied as a Sixth Amendment Amendment claim where the state court reasonably applied *Strickland,* 466 U.S. 668, in denying relief on the claim.

In the seventh specification, the petitioner appears to assert that counsel failed to be diligent in her representation of him because she allegedly failed "to put the

22

State's case to an adversarial testing by evidence within her personal knowledge" (mem. in supp. of pet. at pp. 11-12, doc. no. 12). Specifically, the petitioner contends that his trial counsel was aware that he maintained his innocence, that there was no physical evidence against him, that the palm prints found at the scene did not match his prints, that the case had been closed, and that the victim had refused a polygraph test at some point. The petitioner contends that his trial counsel did not bring these facts out at trial, and thus he was denied effective assistance of counsel. However, the record shows that the petitioner's trial counsel addressed the lack of physical evidence in her closing argument (App. 240-41). Further, the trial attorney attempted to question the investigator about the victim's refusal to take a polygraph, but the judge sustained the prosecutor's objection and prevented her from doing so (App. 170-73).

        Further, the petitioner claims that trial counsel was aware that she could have called two potential alibi witnesses, Joe McMahan and Charles Walker, who had spoken to the Public Defender's investigator and had told him that the petitioner had a white Cadillac. The petitioner contends this fact was important because it made no sense that he would he make his getaway on foot since he owned a car (mem. in supp. of pet. at pp. 11-12, doc. no. 12). The specific issue about the car was not raised in the PCR proceedings, and it is thus barred under *Coleman*, 501 U.S. 711. In the PCR hearing, trial counsel testified that her investigator spoke to the two alibi witnesses, but neither witness could provide an alibi for the specific date. She attempted to subpoena the witnesses anyway, but was unable to do so since Walker was in the hospital and McMahan was no longer at the address (App. 337). The PCR judge found the petitioner failed to meet his burden of proving trial counsel was ineffective in this regard as the alleged witnesses did not testify at the PCR hearing (App. 33) (citing *Bannister v. State*, 509 S.E.2d 807, 809 (S.C. 1998) (finding "a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR

23

hearing in order to establish prejudice from the witness' failure to testify at trial")).  To the extent the petitioner is contending that his trial counsel erred in failing to call these alleged alibi witnesses at trial, the issue was abandoned in the PCR appeal and is thus procedurally barred.  Furthermore, the allegation fails on the merits as the PCR court's finding on this issue was not contrary to and was not an unreasonable application of *Strickland*, 466 U.S. 668.

### *Ground Four*

      In ground four, the petitioner alleges prosecutorial misconduct.  In his first specification, he asserts that the solicitor's closing argument violated his right to a fair and impartial jury.  A similar issue was raised as a Sixth Amendment violation in his PCR.  The petitioner's trial counsel testified that nothing jumped out to her about the solicitor's comments being improper (App. 316).  In denying relief on the Sixth Amendment claim, the PCR court stated:

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the solicitor's closing argument. The Applicant stated the following portion of the argument was improper:
>
> > Ladies and gentlemen, I also want you to remember what the defendant said in his own words when Investigator Fortner spoke with him. The first thing he said is, the hammer is going to fall because I'm black and the clerk was a white girl. He then abruptly stopped himself and asked Investigator Fortner, the clerk was a white girl, wasn't she. You heard Investigator Fortner sit up here and testified that at no time during the interview did he tell the defendant that the clerk was a white girl. I submit to you that the only way he knew that was because on May 12th of 2004, he was inside the Silver Closet.
>
> (Trial transcript, p.228, line 20 – p.229, line 6).

> This Court notes this is an accurate summary of Investigator
> Fortner's testimony. This Court finds this section of the
> solicitor's closing argument was not improper, did not bolster
> any witnesses, and did not inject an improper opinion into the
> closing argument.

(App. 339-40).

This freestanding claim was not timely raised in the abandoned appeal. While it was raised as a Sixth Amendment violation in the state PCR action and denied by Judge Miller, it was abandoned by being dropped as a claim in the PCR appeal by not being raised in the certiorari petition. The petitioner has failed to show cause and prejudice, and thus the claim is barred from consideration under *Coleman*, 501 U.S. at 750, and *Swisher*, 325 F.3d at 231.

In his second claim of misconduct, the petitioner asserts that he did not receive a criminal history of witness Henderson until after the trial. As stated above, he has never litigated this claim in state court.[2] As argued by the respondent, this issue must be deemed procedurally barred, particularly where the petitioner asserts that he received the information at the PCR hearing from his PCR counsel (mem. in supp. of pet. at p. 14, doc. no. 12). The record does not include any information on when or whether his trial counsel received it. However, the matter was not raised during the PCR hearing despite his knowledge and possession of the record (*id.*, doc. no. 12-2) It is procedurally barred by this default

In his third claim of prosecutorial misconduct, the petitioner complains that the Solicitor failed to have all the prints reviewed by the Forensic Division. This claim has never been presented in state court as a free-standing claim. Thus, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice. Again, where the

---

[2] The respondent notes that the criminal history attached to the petitioner's pleadings shows it was run on September 6, 2005, the date of the trial (doc.12-2 at pp. 6-9), and the petitioner claims he first became aware of the record when his PCR counsel provided it to him.

cause is ineffectiveness of counsel, the underlying ineffectiveness claim must have been exhausted in state court. *Murray*, 477 U.S. at 489. Here, the claim was never raised as a Sixth Amendment violation. If the claim of ineffectiveness is itself defaulted, it cannot be the basis for cause, unless the petitioner can establish cause and prejudice with respect to the ineffectiveness claim itself. *Edwards*, 529 U.S. at 452-54; *see also Swisher*, 325 F.3d at 231. The petitioner has failed to do so, and the claim should be dismissed.

### Ground Five

In his next claim, the petitioner contends that there was a "speedy trial act" violation. As noted above, he abandoned his direct appeal. He never raised a speedy trial claim in the appellate courts after the trial, and he is now barred from asserting the claims in habeas corpus under *Coleman*, 501 U.S. 711. Further, where the cause for procedural default is ineffectiveness of counsel, the underlying ineffectiveness claim must have been exhausted in state court. *Murray*, 477 U.S. at 489. Here, the claim was never raised as a Sixth Amendment violation, and thus it cannot be the basis for cause, unless the petitioner can establish cause and prejudice with respect to the ineffectiveness claim itself. The petitioner has failed to do so, and the claim should be dismissed.

### Ground Six

Lastly, in ground six, the petitioner asserts that PCR counsel was ineffective in failing to continue to present claims when the record was left open, particularly as to the alibi defense. The claim is barred by 28 U.S.C. § 2254(I): "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254." It is well-settled that there is no constitutional right to habeas counsel in state collateral proceedings. *See Barraza v. Cockrell*, 330 F.3d 349, 352 (5th Cir.2003) ("there is no

constitutional right to competent habeas counsel," and state statutory requirement for the appointment of competent habeas counsel does not create a constitutionals secured right); *Weeks v. Angelone*, 176 F.3d 249, 274 (4th Cir.1999) ("[T]his Court does not recognize a constitutional right to counsel on state habeas ...."). Accordingly, this claim fails.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 27) be granted.


s/Kevin F. McDonald
United States Magistrate Judge

January 27, 2011

Greenville, South Carolina

27